WRIGHT, J., DISSENTING:
The majority opinion concludes that Lettie Sexton lacks standing to bring a cause of action in the courts and orders that the trial court's decision be vacated and the petition for judicial review dismissed. Constitutional standing has three requirements: (1) injury, (2) causation, and (3) redressability.
Sexton was denied treatment for a heart condition to which she claims she had a right under Medicaid. The denial of the right to coverage and danger to her life is an injury. Coventry Health and Life Insurance, Inc. (Coventry) denied Sexton's request for additional observation and testing which was a denial of her alleged right to treatment and increased danger to her life. Coventry's denial of Sexton's claim for medical treatment left her dependent upon the charity of strangers. The alleged injury *200 is redressable by ordering Coventry to pay Sexton for the value of any treatment wrongfully denied.
The majority's position is that since Sexton was fortunate enough to receive charity to cover the treatment, this destroyed her standing to sue in the courts of the Commonwealth to address the alleged wrongful denial of her right to treatment. The fact that the danger to Sexton was so severe that the doctor and the hospital gave her the treatment when they knew it was extremely unlikely they would be paid does not alter the fact that she was denied treatment by Coventry (causation) for which she had an alleged right (injury). Therefore, I dissent from the determination that Sexton lacked standing to sue in the courts of the Commonwealth.
Medicaid prohibits a health care provider from collecting any payment for treatment beyond what is paid by Medicaid. The patient who has been denied a treatment has two options: (1) request a hearing on the denial or (2) pay for the treatment herself and then request a hearing on the denial. If a person has enough money to pay for the treatment, the second would be a possibility. If the person is poor and unable to pay for the treatment, her only option is to forgo the treatment and request a hearing on the denial. This is a reasonable option unless the condition is life-threatening. If Sexton was unable to pay and postponed the treatment until a hearing could be had, then the critical life-threatening period would pass before a hearing could be had on the issue. If she was still alive when the hearing came about, then the hospitalization and treatment would obviously be unnecessary. If she died before the hearing, the hospitalization and treatment would be unnecessary, and she would lack standing to sue in the courts of the Commonwealth. A person who is rich enough to pay for her treatment and then appeal would have the option of obtaining potentially life-saving treatment. The person who is too poor to pay for her treatment is discriminated against by a denial of her potentially life-saving treatment merely because she is too poor to pay for the treatment.
A third option occurred in Sexton's case: the doctors and hospital were strongly of the opinion that hospitalization and treatment for additional time were necessary. Their determination of need was so strong that they provided the treatment even when they were aware that it would foreclose them from being paid. This treatment by the doctors and hospital was provided after Coventry denied coverage for the treatment (injury and causation). After Coventry had caused the alleged injury of denying Sexton potentially life-saving treatment, then the doctors and hospital treated her out of charity. The majority's position is that this act of charity destroyed Sexton's standing and ability to seek redress in the courts of the Commonwealth.
Unfortunately, Sexton lacked the ability to pay and when she received charity from the doctors and hospital the majority's opinion would deny her access to justice due to her financial condition of only being able to receive a potentially life-saving treatment as a result of charity. The majority effectively slams the courthouse doors in Sexton's face due to her economic condition-creating an access to justice issue for our most vulnerable population. As William Blackstone stated centuries ago, "it is a settled and invariable principle ... that every right when withheld must have a remedy, and every injury its proper redress." Commentaries on the Law of England, note 42 at 109 (1765). Here, Sexton's right was withheld, and she sustained an injury. However, she is afforded neither *201 remedy nor redress due to her socioeconomic status.
The majority opinion holds that Sexton lacks standing because: (1) she received the treatment the treating physician said she needed so the treatment is no longer needed; (2) the hospital and doctors are prohibited from suing a Medicaid patient for the services provided and cannot sue Sexton; and (3) since she received the treatment and is immune to suit for the cost of the treatment she lacks an injury to give her standing to sue in the courts of the Commonwealth.
If Sexton had enough money to have paid for her treatment she would have been able to have an administrative hearing and standing in the courts. Because Sexton was not rich enough to pay for her treatment and was dependent upon the charity of strangers, she was denied an administrative hearing and is now being denied standing to have her case heard in the courts. The only difference between Sexton and a patient who is rich enough to pay for their treatment is that Sexton's treatment was paid for by the charity of others.
The problem with the majority's position is that the injury occurred when Sexton was denied coverage for treatment which allegedly should have been paid by her Medicaid coverage. The charity from the hospital and doctors occurred later in time and was not a factor in the denial of coverage. It is a dangerous precedent to say that the courts will not hear a party who has been injured if the party receives charity to give them what they are already entitled to.
If Sexton had been able to pay for her own treatment, then she could have requested a hearing and, if denied, sought redress in the courts of the Commonwealth. If Sexton's relatives had given her the money for the treatment, would she lack standing to sue in the courts of the Commonwealth of Kentucky? Since the money for the treatment would be a gift, Sexton's relatives would lack the ability to require her to repay it. Under the majority's position, if Sexton received the treatment and could not be legally required to repay her relatives, then she would not have an injury. Therefore, Coventry's denial of coverage would not be an injury and she would lack standing in the courts.
It is important to understand where the majority's position might lead us in the future. Suppose Sexton had purchased a car to travel to the hospital for dialysis treatment rather than being denied Medicaid, then a dispute arose over the purchase agreement and the car dealer refused to give her the car. If her neighbors were so concerned that they raised the money and gave Sexton a car that was as good as or better than the one that she was purchasing, the car would be a gift, and the neighbors would lack the legal right to require her to repay the money or return the car. In the current case, Sexton claims she has a right to coverage under Medicaid. In this example, she would be claiming a right to possession of the car under her purchase agreement. Under the majority's position, Sexton would lack an injury and standing to sue the dealer for the car under her purchase agreement. Are we really going to say that a subsequent act of charity would deprive someone of the ability to go to court and establish their rights?
How remote does the act of charity have to be before we will allow the economically disadvantaged into the courts? The majority would deny Sexton's access to the courts if the charity was given by the doctors or hospital. A logical extension of the majority's position would deny her access to the courts if the money to pay for the treatment was given by her relatives. The majority's ruling would also deny her *202 access to the courts due to charity from her friends and neighbors. The simple fact is that she is injured if Coventry denies her coverage without regard to whether she received charity from someone-or when that charity happens to occur.
Coventry caused Sexton's alleged injury by denying her treatment under her Medicaid coverage. The injury occurred prior to the doctors and hospital deciding (even though they were very unlikely to be paid) to give her the treatment. The fact that Sexton received the treatment does not change the fact that she was denied coverage to which she alleges she had a right. The injury occurred when she was denied coverage and the subsequent charity from the doctors and hospital does not change the fact that she was injured.